NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE R.,<br><br>                  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | Civil Action No.: 21-1279<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

**I.      INTRODUCTION**

Before the Court is the appeal of Jacqueline R.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act ("SSA"). *See* ECF No. 1; *see also* ECF No. 19 ("Pl. Br."). The Commissioner opposed the appeal. *See* ECF No. 21 ("Def. Br."). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.     BACKGROUND**

Plaintiff is a 50-year-old woman who completed a high school education and received a bachelor's degree in psychology. ECF No. 11 ("Tr.") at 44. She previously worked as a teller and a personal banker. *Id.* at 20–21, 312, 330, 513. According to Plaintiff, her appeal is predicated on

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

1

the following impairments: major depressive disorder, anxiety, post-traumatic stress disorder ("PTSD"), fibromyalgia, lumbar disc herniation, cervical disc herniation, cervical bulging disc, spinal stenosis, scoliosis, vertigo, and migraines. Pl. Br. at 1.

### A. Summary of Medical Treatment for Physical Impairments

In April 2013, Plaintiff injured her back while bending down and picking up a bag of coins at work. Tr. at 845, 1007. An MRI revealed a small left foraminal disc herniation, but Plaintiff was diagnosed with a lumbar strain due to a lack of evidence of significant acute disc herniation. *Id*. at 666, 680, 845. In October 2013, Plaintiff tripped, fell backwards, and hit her head at work, causing her neck and back pain but no headache or loss of consciousness. *Id*. at 409. Over the next few months, medical providers reported improvements with physical therapy, full range of motion of the cervical spine, intact motor strength, sensation, and reflexes, and opined that Plaintiff could continue to work full time. *Id*. at 962, 969–70, 979–80. A November 2013 MRI showed C4-5 and C5-6 central disc herniations and a C6-7 right paracentral disc herniation. *Id*. at 967–68. In April 2014, Plaintiff's provider suggested a spine surgery consultation because Plaintiff had some subtle upper motor neuron findings with MRI evidence of spinal cord impingement at C5-6. *Id*. at 1016.

In late 2016 and early 2017, Plaintiff visited Premier Orthopaedics and Sports Medicine several times, where the provider observed lumbar radiculopathy and bursitis of the hips, neck pain with likely radiculitis, bilateral hip pain improving with therapy, cervical pain with radiculitis, and HNP C6-7 with some central canal stenosis. *Id.* at 446–48, 450–52, 454–59. The provider recommended physical therapy, a refill of Voltaren gel, greater trochanteric injections, and a pain management specialist. *Id.* at 448, 452, 456. Plaintiff reported physical therapy improved her symptoms, but eventually stopped physical therapy; she rejected greater trochanteric injections, and did not see a pain management specialist. *Id.* at 452, 459. Plaintiff saw the same provider

again in July and September 2017 with similar symptoms, at which the provider again recommended physical therapy and Voltaren gel for cervical pain, left lumbar radiculopathy and trochanteric bursitis of the hips. *Id*. at 441, 445, 531. Plaintiff engaged in physical therapy for her back on and off between July and November 2017. *Id*. 441, 446, 814–20. Plaintiff sought treatment for her neck and back again in July 2019, when a medical provider assessed Plaintiff and ordered an MRI, which showed similar mild degenerative disc disease, mild disc protrusions, and mild-to-moderate bilateral facet arthropathy. *Id.* at 678–80, 698–99. Plaintiff's neck and back pain improved by late 2019, during which Plaintiff reported no musculoskeletal problems, arthralgias, joint pain, or back pain. *Id.* at 1059, 1203–04.

During an annual examination in February 2018, Plaintiff reported taking Motrin for body aches for several years and Meclizine for episodes of vertigo. *Id.* at 1156. The examination revealed spinous process tenderness throughout the spine and positive fibromyalgia trigger points *Id.* at 1161. The provider recommended Plaintiff continue taking Tylenol and Motrin for her body aches. *Id.* at 1162. In June 2019, Plaintiff was diagnosed with migraines and, in October 2019, chronic headache syndrome. *Id.* at 1070, 1077.

Plaintiff is also treated for asthma and chronic obstructive pulmonary disease ("OSA"). *Id.* at 1204. Plaintiff reported asthma flare-ups at times but that her asthma was generally controlled, which was corroborated by normal respiratory examinations. *Id.* at 1084, 1207, 1209, 1218. A medical provider classified her asthma as mild, intermittent with dyspnea on exertion and exacerbation with weather changes. *Id.* at 1207, 1209. Her asthma symptoms were relieved by inhaler use and rest, and she reported that her OSA was improving with CPAP use. *Id.* at 1202–04, 1207–11, 1218.

B.     **Summary of Medical Treatment for Mental Impairments**

Between November 2014 and May 2017, Plaintiff's medical providers diagnosed her with

PTSD, anxiety, and depression, and prescribed her medications including as Lexapro, Zoloft, Ambien, Wellbutrin, and Prazosin. *Id.* at 504–12, 494–96, 751–52, 764–65, 772–99. In August 2017, Plaintiff's mental health worsened. She sought emergency room treatment for depression and evaluation of suicidal ideation and attended a partial hospitalization program for approximately five hours per day, three days per week due to worsening symptoms of depression and anxiety. *Id.* at 513, 543, 560, 601–02, 723–25, 1048–50. Her conditions improved and she was discharged from the partial hospitalization program on September 1, 2017. *Id.* at 595.

Throughout the rest of 2017 through February 2019, Plaintiff continued regular outpatient visits and received mental status examinations for her anxiety, depression, and PTSD. *Id.* at 549–50, 578–581, 595, 703–12. Examinations revealed fluctuations in her conditions, with improvements during stable periods and deterioration triggered by life stressors such as health concerns and family issues. *Id.* Throughout her treatment from 2014 to 2019, mental status examinations consistently revealed normal speech, a logical, goal-oriented thought process, abstract reasoning skills, performance of simple computations, normal attention and concentration, normal memory, good insight, judgment and impulse control, and neat grooming. *See generally id.*

## C. Procedural History

Plaintiff initially filed an application for DIB on June 26, 2017, and July 5, 2017, alleging an onset of disability of November 20, 2013, due to PTSD, major depressive disorder, degenerative disc disease of the cervical and lumbar spine; radiculopathy of the cervical spine with a herniated nucleus pulposus (HNP); asthma; anxiety; and a sprained right ankle. *Id.* at 260-70, 311. Plaintiff's claim was denied by the reviewing state agency at both the initial and reconsideration levels. *Id.* at 142–52. An ALJ held an administrative hearing on December 19, 2019, at which Plaintiff (who was represented by counsel), her husband, and an impartial vocational expert

testified. *Id.* at 36–77. The ALJ issued an unfavorable decision on March 30, 2020. *Id.* at 9–22. On November 24, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner. *Id.* at 1–5. This appeal followed.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Horst v. Comm'r of Soc. Sec.*, 551 F. App'x 41, 45 (3d Cir. 2014) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

#### B. Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show she is disabled by

5

demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

    **C.**    **Sequential Evaluation Process for a Continuing Disability**

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit her ability to work. *Id.* Third, if she has any severe impairments, the ALJ considers the medical evidence to

determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

## IV.   DISCUSSION

### A.   Summary of the ALJ's Decision

At step one of the five-step sequential process, the ALJ determined that Plaintiff had not performed substantial gainful activity since her alleged onset date, November 20, 2013. Tr. at 11. Next, at step two, the ALJ found that Plaintiff had the severe impairments of PTSD, major depressive disorder, generalized anxiety disorder, lumbar degenerative disc disease, cervical degenerative disc disease with radiculopathy, asthma/chronic obstructive, pulmonary disease, and post-concussive symptoms with migraines. *Id.* at 11–12. At step three, the ALJ decided that Plaintiff's conditions, individually or in combination, did not meet or medically equal a listed impairment. *Id.* at 12–13. The ALJ then concluded that Plaintiff retained the ability to perform

7

light work except that she can occasionally climb ramps and stairs; can never climb ladders, ropes and scaffolds; can occasionally balance, stoop, or kneel; can never crouch or crawl; can occasionally reach overhead with the bilateral upper extremities; can occasionally push and pull with the bilateral upper extremities; can frequently perform handling, fingering, and feeling with the bilateral upper extremities; can occasionally push and pull with the bilateral lower extremities; can occasionally operate foot controls with the bilateral lower extremities; must avoid concentrated exposure to extreme cold or heat, humidity, wetness, fumes, odors, dusts, gases, and other pulmonary irritants; must avoid unprotected heights and moving mechanical parts; can understand, remember, and carry out simple instructions; can perform work that is not at high production pace; can tolerate occasional contact with supervisors, coworkers, and the public; can adapt to routine changes in workplace that are occasional and that are gradually introduced; due to lapses in concentration focus and/or memory and/or the need for unscheduled breaks and/or due to need to alternate positions would be off task 5% of the day; and due to impairments would be absent one time per month. *Id.* at 13–20. At step four, the ALJ determined that the RFC assessment precluded the performance of Plaintiff's past relevant work. *Id.* at 20. Nevertheless, at step five, the ALJ found that, based on the testimony of the vocational expert, Plaintiff could still perform other work in the national economy. *Id.* at 21–22. Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. *Id.* at 22.

      **B.**     **Plaintiff's Arguments on Appeal**

In the instant appeal, Plaintiff contends that the Commissioner (1) did not address various medical records related to her spinal conditions; (2) did not address the severity of her mental health; and (3) did not give enough weight to her fibromyalgia and vertigo. *See* Pl. Br. at 1–2. The Court addresses each argument in turn.

8

First, the ALJ's decision as it relates to Plaintiff's spinal conditions was based on an extensive review and analysis of the record, including the records that Plaintiff claims the ALJ did not consider. Plaintiff asserts that the ALJ "did not address" an "MRI that showed marked foraminal stenosis in several levels of my cervical spine," citing MRI results from August 9, 2019. Pl. Br. at 1; ECF No. 19-2. However, the ALJ explicitly considered this MRI report. *See* Tr. at 18–19 ("A cervical spine MRI in August 2019 showed mild multilevel degenerative disc disease and disc protrusions at C4-C5 and C5-C6, indenting the ventral aspect of the thecal sac and resulting in mild central stenosis."). Beyond the MRI report, the ALJ thoroughly reviewed Plaintiff's lengthy medical history related to her lumbar and cervical spine conditions, including MRIs, x-rays, examination and treatment reports, and self-reports. *Id.* at 14–15, 17–19. The ALJ concluded that Plaintiff's "allegations of disability related to her neck and back pain are not consistent" with the evidence, and explained her decision by pointing to Plaintiff's conservative treatment; her failure to follow up with recommended injections and surgical consultations; reports of her consistent gait; the lack of evidence that she needs a cane at home; reports of her 5/5 strength and full range of motion; and self-reports of lumbar symptom improvement. *Id.* at 19. Therefore, the ALJ properly "g[a]ve some indication of the evidence which [she] rejects and [her] reason(s) for discounting such evidence," and thus satisfied her obligation. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).

Second, the ALJ's assessment of Plaintiff's mental health conditions is likewise supported by the record. Plaintiff asserts that the ALJ "did not address the severity of [her] mental health," but the ALJ's decision indicates otherwise. Pl. Br. at 1–2. The ALJ first addressed the severity of Plaintiff's mental health by including PTSD, major depressive disorder, and generalized anxiety disorder among her severe impairments. Tr. at 11. In her RFC assessment, the ALJ concluded Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms," but that

9

"the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 15. The ALJ justified her opinion by pointing to "mostly conservative treatment" for Plaintiff's mental impairments, which was shown through a comprehensive review of Plaintiff's hearing testimony, self-reports, mental status examinations, consultative psychological examinations, and the opinions of two state agency psychological consultants. *Id.* at 12–17, 20. The ALJ explained that Plaintiff's mental status examinations and mood remain generally stable even when she is not taking psychiatric medication, that she frequently declines medication, and that both medical providers and Plaintiff reported improvements in her mental health. *Id.* at 17. Therefore, the Court finds that the ALJ sufficiently considered the evidence and properly gave "some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

Third, the ALJ showed that she gave sufficient weight to Plaintiff's fibromyalgia and vertigo in her analysis given the record before her. The ALJ addresses both fibromyalgia and vertigo in her RFC assessment. The ALJ noted that Plaintiff "had positive fibromyalgia trigger points" at a physical in February 2018 and multiple tender points along her lower extremities in July 2019. Tr. at 18. The ALJ considered Plaintiff's reports of neck pain, back pain, and joint pain at length, and as discussed, concluded that her allegations of pain intensity are not consistent with the record. *See supra*; Tr. at 19.[2] The ALJ likewise considered Plaintiff's vertigo, noting her consistent complaints of dizziness to medical providers resulting from a concussion. Tr. at 17, 19. The ALJ noted that Plaintiff testified at the hearing that "she got dizzy a lot and lost her balance

---

[2] Furthermore, Plaintiff did not appear to mention fibromyalgia at her hearing, *id.* at 38–77, and her brief does not "specif[y] how [fibromyalgia and vertigo] would affect the five-step analysis undertaken by the ALJ, beyond an assertion . . . [of] generalized" impact. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

10

causing falls 3–4 times" per month. *Id.* at 15. The ALJ considered Plaintiff's reports of dizziness with her other impairments, noting that Plaintiff's physical examinations do not support her allegations about losing her balance as frequently as she alleges. *Id.* at 19. For these reasons, remand is not required.

V. **CONCLUSION**

In sum, the ALJ's decision contains a review of evidence and analysis that "a reasonable mind might accept as adequate to support [the] conclusion" that Plaintiff's RFC of light work was proper.[3] *Mattei v. Comm'r Soc. Sec.*, No. 22-2721, 2023 WL 3479567, at *2 (3d Cir. May 16, 2023). Ultimately, the Court is not permitted to remand simply because it may have reached a different determination based on the evidence in the record. *S.F. v. Comm'r of Soc. Sec. Admin.*, No. CV 21-15484 (RMB), 2022 WL 4596721, at *5 (D.N.J. Sept. 30, 2022) ("In short, Plaintiff's challenge essentially constitutes an impermissible request for the Court to reweigh the evidence of record, but this challenge fails on appeal."). Because the ALJ's determination is supported by substantial evidence, remand and/or reversal is not appropriate. Thus, the ALJ's decision is affirmed.

**Accordingly**, **IT IS** on this 21st day of February, 2025,

**ORDERED** that Plaintiff's appeal (ECF Nos. 1, 20) is **DENIED**; and it is further

**ORDERED** that the decision of the Administrative Law Judge is hereby **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court shall mark this matter as **CLOSED**.

---

[3] To the extent Plaintiff concludes that she cannot perform any jobs in the national economy, the Court notes that the ALJ performed a thorough analysis based on Plaintiff's RFC, age, education, work experience, Medical-Vocational Guidelines, and the testimony of a vocational expert to determine that work suitable to Plaintiff's limitations exists in significant numbers in the national economy. Tr. at 21–22.

**SO ORDERED**.

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**
